IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KEVIN LANGLEY<br>102 Bluff Terrace<br>Silver Spring, MD 20902<br><br>    Plaintiff,<br><br>  v.<br><br>NATIONAL PUBLIC RADIO, INC.<br>1111 North Capitol Street, NE<br>Washington, D.C. 20002<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:22-cv-00016 |

**DEFENDANT NATIONAL PUBLIC RADIO INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff Kevin Langley ("Plaintiff") raises six separate counts in his Complaint, five of which are predicated on alleged discrimination and retaliation and one of which is predicated on a delayed severance payment. *First*, Plaintiff's discrimination claims are squarely foreclosed by the Separation Agreement he signed upon leaving National Public Radio, Inc. ("NPR"), in which he "release[d], discharge[d], acquit[ted], and relinquished[ed] NPR . . . from any and all claims, actions, demands, liabilities, and causes of action of whatever kind or character." Ex. A, at 2. Lest there be any doubt, the release explicitly addresses any claims "arising under Title VII of the Civil Rights Act of 1964 . . . 42 U.S.C. § 1981 . . . [and the] Age Discrimination in Employment Act."—the three statutes Plaintiff employs to raise his discrimination and retaliation claims. *Id.* That release is valid and enforceable, and bars Plaintiff's discrimination and retaliation claims. *Second*, Plaintiff's breach of contract claim is baseless because he has suffered no damages. The Separation Agreement provided that he would be paid a $20,000 lump sum, and he was provided exactly that

- 1 -

amount on January 8, 2020. *Id.* at 2; Compl., ECF No. 1-2, ¶ 30. District of Columbia law is clear: a plaintiff cannot succeed on a breach of contract claim absent damages, and Plaintiff has not suffered any here. For these reasons and for those set forth below, the Court should dismiss this Complaint in its entirety.

## FACTUAL BACKGROUND[1]

Plaintiff was hired by NPR as a Broadcast Recording Technician in 1994. Compl. ¶ 5. Over the course of his employment, Plaintiff was promoted on multiple occasions and eventually became the Director of Broadcast Engineering. *Id.* at ¶¶ 5, 11. Beginning in 2010, Plaintiff complained to NPR leadership regarding his failure to obtain various promotions. *Id.* at ¶ 7–8. NPR investigated all of Plaintiff's complaints and determined that those complaints were baseless. *Id.* Beginning in 2016, Plaintiff's performance began to lag and his reviews reflected the same. *Id.* at ¶ 12. Over the course of three successive "overwhelmingly negative" performance reviews, Plaintiff's supervisors made clear that he was not adequately performing the duties of his job. *Id.* One colleague, Mark Bejarano, indicated that Plaintiff "failed to fulfill his managerial responsibilities." *Id.* ¶ 13.

In 2018, Plaintiff filed another complaint predicated on NPR's alleged failure to promote him and increase his pay. *Id.* ¶ 15. At approximately the same time, Plaintiff submitted a request for a pay increase because he believed he was paid less than other directors at NPR. *Id.* ¶ 18. In May 2019, Plaintiff became "overburdened in his position" as Director of Broadcast Engineering and declined additional work his supervisors sought to assign him. *Id.* ¶ 20. Soon after, NPR

---

[1] For purposes of this Motion only, NPR assumes the truth of the allegations contained in Plaintiff's Complaint. *E.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

informed Plaintiff that his position was being eliminated as part of a restructuring of his department. *Id.* ¶ 20.

Plaintiff's termination was made effective on July 19, 2019. *Id.* ¶ 28. NPR agreed to "offer an additional month's pay and a lump sum payment of $20,000" following his termination. *Id.* On August 15, 2019, Plaintiff signed a Separation Agreement to that effect, following an email exchange that guaranteed him additional payment. Ex. A, at 6; Ex. B, at 1. Notwithstanding the plain terms of that Agreement, Plaintiff brought suit against NPR alleging violations of Title VII (Counts I and II), 42 U.S.C. § 1981 (Counts III and IV), and the ADEA (Count V). He also raised breach of contract allegations (Count VI). As detailed below, not one of these claims is cognizable.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be facially plausible, it must permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That standard requires a plaintiff to demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 557 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Importantly, alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678. That means that "an unadorned, the defendant-unlawfully-harmed-me accusation" should not be credited, and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 679.

In determining whether a complaint fails to state a claim, the Court generally will "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). "[W]here a document is referred to in the complaint and is central to the plaintiff's claim"—like the Separation Agreement and email at issue here—such "document[s] attached to the motion papers may be considered without converting the motion to one for summary judgment." *Jones v. Nat'l Council on Disability*, 66 F. Supp. 3d 94, 100 (D.D.C. 2014), *aff'd* 2015 WL 653308 (D.C. Cir. Feb. 5, 2015).

## ARGUMENT

### I. Plaintiff Has Already Released All Claims Against NPR.

Plaintiff cannot state a claim for relief against NPR, because he has already waived all claims as part of a Separation Agreement that entitled him to a month's salary and a lump-sum payment of $20,000.[2] Plaintiff signed the Agreement at issue on August 15, 2019, which—in relevant part—provides that:

> Upon the Separation Date, and in exchange for the Separation Benefits and other good and valuable consideration, Employee, for and on behalf of Employee individually and Employee's heirs, representatives, and assigns, if any, hereby does fully, finally, completely, and forever release, discharge, acquit, and relinquish NPR . . . from any and all claims, actions, demands, liabilities, and causes of action of whatever kind or character, joint or several, whether now known or unknown, asserted or unasserted, arising on or before the Separation Date, under any federal, state, or local statute, common law, or other applicable law (each, a "Claim"), including, but not limited to, any Claim arising under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (race, color, religion, sex, and national origin discrimination); 42 U.S.C. §1981 (race discrimination); . . . the Age Discrimination in Employment Act ("ADEA''); . . . for any and all injuries, harm, damages, penalties, costs, losses, expenses, attorneys' fees, and liability or

---

[2] Plaintiff does not attach the Separation Agreement to his Complaint, but, as noted, the Court may nevertheless consider its terms in ruling on the instant motion. *See, e.g.*, *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011) ("In ruling on a 12(b)(6) motion, a court may consider . . . documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim."). Given its waiver provisions, the Separation Agreement is integral to each of his discrimination claims and—at risk of stating the obvious—is integral to his breach of contract claim predicated upon the Agreement.

other detriment, if any, whenever incurred, or suffered by Employee as a result of any and all acts, omissions, or events by the Released Parties, collectively or individually.

Ex. A, at 2.

Plaintiff further confirmed that he "read the terms of [the] Agreement completely," that he "under[stood it] fully," and that he entered "into [the] Agreement voluntarily after complete and adequate opportunity to consider all the relevant facts and Employee's legal rights, for the purpose of making a full and final compromise, adjustment and settlement of any and all Claims." *Id.* at 6. The Agreement provides that its terms "are contractual in nature . . . and will be governed in accordance with the laws of the District of Columbia . . . and, where applicable, the laws of the United States." *Id.* at 5.

When determining the enforceability of a contract in the District of Columbia, "courts look to the written language of the agreement to determine the rights and liabilities of the parties, regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible to a clear understanding, or unless there is fraud, duress, or mutual mistake." *Anzueto v. Wash. Metro. Area Transit Auth.*, 357 F. Supp. 2d 27, 30 (D.D.C. 2004) (citing *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003)). It follows that where "the release language is lawful and unambiguous, [an] agreement will be enforced as written." *Morgan v. Fed. Home Loan Mortg. Corp.*, 172 F. Supp. 2d 98, 105–06 (D.D.C. 2001). Consistent with that law, Plaintiff's execution of the Separation Agreement ends this matter. There is nothing ambiguous here: the Agreement clearly provides for the waiver of all claims in exchange for a month of additional salary and a lump-sum payment, and—while unnecessary[3]—expressly indicates that

---

[3] *Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*, No. Civ.A.04-0538 JDB, Civ.A.04-1240 JDB, 2005 WL 1541041, at *2 (D.D.C. June 30, 2005) ("However, the law is clear that a

Plaintiff waived any claims under Title VII, § 1981, and the ADEA.  And as the Supreme Court has noted, that release is valid.  *See, e.g.*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974) (providing that a Title VII claimant can validly release defendants from further litigation by entering into voluntary agreement).  To that end, agreements like that executed here are routinely enforced by courts in this District according to their plain terms.  *Brown v. United States*, 271 F. Supp. 2d 225, 228-29 (D.D.C. 2003) (dismissing Title VII claims in light of binding settlement agreement); *Morgan*, 172 F. Supp. 2d at 106 (dismissing Title VII claims because plaintiff signed release of all claims relating to employment); *Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.*, No. Civ.A.04-0538 JDB, Civ.A.04-1240 JDB, 2005 WL 1541041, at *2 (D.D.C. June 30, 2005) (acknowledging that releases of employment claims are "routinely enforced" and granting employer's motion to dismiss).  Regardless of Plaintiff's intent or interpretation, then, he is bound by the terms of the release into which he voluntarily entered.  *See, e.g.*, *Samman v. Wharton Econometric Fore-Casting Assocs.*, 577 F. Supp. 934, 935 (D.D.C. 1984) (subjective intent irrelevant in determining whether plaintiff waived Title VII claims).

Given that the Agreement is clear, Plaintiff would need to demonstrate that the contract was the product of duress, mutual mistake, or fraud to render it unenforceable.  *See DSP Venture Grp., Inc.*, 830 A.2d at 852.  He does not raise any allegations of mistake or duress, and only attempts to circumvent this overwhelmingly negative precedent by relying on implausible allegations of fraud.  Specifically, he claims that NPR "fraudulently induced the settlement agreement by misrepresenting that the new supervisor positions"—occupied by his alleged replacements—"had been planned for two years."  Compl. ¶ 30.  Of course, it is entirely unclear how the precise dates

---

broad and unambiguous release need not list every conceivable cause of action that might come within its terms." (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 443 (5th Cir. 2002)).

of planning for two positions at NPR would have affected Plaintiff's decision to sign his Separation Agreement. And likely for that reason, Plaintiff never actually alleges that he relied on that information in executing the Agreement. That much is fatal to his claim. *Bailey v. Verizon Commc'ns*, 544 F. Supp. 2d 33, 37 (D.D.C. 2008) (holding that "claim of fraudulent inducement against defendant" could not give rise to liability "because plaintiff does not allege that she relied upon any such false assurance made by defendant").

Yet even apart from that specific deficiency, the implications of adopting Plaintiff's theory would be exceptionally far-reaching. Under District of Columbia law, "[a] completely integrated contract may not be supplemented with prior representations not ultimately included therein, even if those representations are not expressly contradicted by the contract itself." *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 928 (D.C. 1992) (citation omitted). That is relevant here, where Plaintiff agreed that he did "not rely . . . on any document, representation, or statement, whether written or oral, other than those specifically set forth" within the Agreement itself. Ex. A, at 5. Permitting baseless allegations of fraudulent inducement to defeat the plain terms of the Agreement would contravene that clear language, as well as decades of precedent from the District of Columbia Court of Appeals and federal courts. *See, e.g.*, *One-O-One Enters., Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) ("Were we to permit plaintiffs' use of the defendants' prior representations (and defendants' nondisclosure of negotiations inconsistent with those representations) to defeat the clear words and purpose of the Final Agreement's integration clause, 'contracts would not be worth the paper on which they are written.'" (citation omitted)); *Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*, 436 F. Supp. 3d 17, 34 (D.D.C. 2020) (holding that allegations of false representations prior to execution of contract were barred by presence of integration clause); *Hercules & Co., Ltd.*, 613 A.2d at 928 n.17 ("[A] recital that the [contract]

'contains the entire agreement of the parties,'" moreover, "has traditionally been given effect 'as showing an intention that the agreement be [treated as] fully integrated.'"). Reading past this integration clause based on unfounded allegations of fraudulent inducement would render even the clearest of separation agreements a dead letter.

Finally, to the extent Plaintiff argues that he was not afforded a twenty-one day period to consider the agreement, as is required by the Older Workers Benefit Protection Act ("OWBPA"), *see* 29 U.S.C. § 626(f)(1)(F)(i), his claims fail under the unambiguous terms of the Agreement, *see* Compl. ¶ 29. Specifically, the Agreement provides that Plaintiff was afforded "a period of time of up to twenty-one (21) days, if desired, to consider" whether to sign. Ex. A, at 3. NPR did precisely that. The Agreement was first presented to Plaintiff via email on or before his termination date of July 19, 2019. *See* Compl. ¶ 28. Plaintiff negotiated improved terms to the original offer that led to the revised offer on August 5, 2019. Ex. B, at 1.[4] Carrie Storer, NPR's Chief Human Resources Officer, delivered the revised offer with an explicit proviso that the revised offer would not extend the twenty-one day period for OWBPA review. *Id.* ("This updated offer is conditioned on you agreeing to not 'restart' the consideration period."). As Equal Employment Opportunity

---

[4] As with the Separation Agreement itself, communications leading to that Agreement—which are referred to in the complaint and are integral to Plaintiff's ADEA claim in Count V—can be considered at the motion to dismiss stage. *See, e.g.*, *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 101 (D.D.C. 2015) (court can consider exhibits appended to a motion to dismiss if they are "referred to in the complaint and integral to a claim"). Plaintiff expressly notes that he "exchanged emailed [sic] with Ms. Storer between July 19, 2019 and August 16, 2019 regarding a severance package." Compl. ¶ 28. Such emails, demonstrating (1) that he was afforded twenty-seven days to review the Separation Agreement and (2) that his eventual acceptance was conditional upon *not* restarting the twenty-one day review period are both referred to and integral to his complaint. *See, e.g.*, *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 146 (D.D.C. 2007) (considering email communications on motion to dismiss where emails referred to in complaint clearly stated that agreement would not come into effect prior to receipt of certain documentation); *Spence v. Wolf*, No. 19-2919 (TJK), 2020 WL 6075727, at *4 n.4 (D.D.C. Oct. 15, 2020) (considering email communications on motion to dismiss where emails to EEO office were referred to in plaintiff's complaint and were central to his claim).

Commission regulations make clear, "[t]he parties may agree that changes, whether material or immaterial, do not restart the running of the 21 . . . day period," without affecting the validity of a release. 29 C.F.R. § 1625.22(e)(4). By accepting the revised offer, that is exactly what Plaintiff did—agree that the changes he sought to the terms of the Agreement would not extend the twenty-one day period. In sum, NPR provided Plaintiff twenty-seven days to review the Agreement—signed by Plaintiff on August 15, 2019—which fully complies with the OWBPA.

At bottom, resolving a motion to dismiss is a context-specific endeavor "that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. And here, common sense makes clear that Plaintiff (1) signed a Separation Agreement (2) with knowledge that it precluded *all* potential claims (3) including the specific statutes he is currently citing in this action and (4) without any plausible justification that would render the Agreement unenforceable. Counts I through V should be dismissed.

## II. Plaintiff Cannot State a Claim for Breach of Contract, Because the Breach Has Already Been Remedied.

Apart from his claims of discrimination, Plaintiff also alleges that NPR breached the terms of the Separation Agreement when his lump-sum payment was delayed by a number of months in late 2019. Compl. ¶¶ 30, 60–62. Yet that delay alone is no basis for a breach of contract claim under District of Columbia law. "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) *damages caused by breach*." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (emphasis added).

Here, Plaintiff has already essentially conceded that he cannot establish the fourth element of a breach of contract claim. True, he makes the bald assertion that "NPR failed to make the payment as required." Compl. ¶ 61. Of course, that directly contravenes Plaintiff's own admission

that NPR "did . . . pay [Plaintiff] the $20,000 it owed him." *Id.* at ¶ 30.  Plaintiff does not allege that he has suffered any consequential damages from the delayed payment, and so he cannot succeed on a breach of contract claim; after all, one party's delay in performance is "not enough to justify rescission of a settlement agreement unless the delay warrants the conclusion that performance is not intended." *In re Mettlen*, 174 B.R. 822, 825 (D. Kan. 1994); *see also In re MS Madeleine Schiffahrtsgesellschaft MBH Co. KG*, 426 F. App'x 733, 737 (11th Cir. 2011) (delayed payment under settlement agreement did not entitle party to rescind waiver).  Whether performance was intended here is not at issue, because NPR has already performed.

In sum, Plaintiff is raising a breach of contract claim over an Agreement with which NPR has already complied.  He has accepted substantial payments in exchange for a release of his claims, and he does not allege that he has returned any of those payments (and, to be clear, he has not done so).  Permitting Plaintiff to proceed on a breach of contract claim would vitiate the damages requirement in any such allegation, and so Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety for failure to state any claim upon which relief may be granted.


Dated:  January 11, 2022

Respectfully submitted,

　*/s/ M. Carter DeLorme*
M. Carter DeLorme (D.C. Bar # 452791)
cdelorme@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939 (telephone)
(202) 626-1700 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2022, I caused a copy of the foregoing to be served via e-mail on counsel for Plaintiff Kevin Langley at the following address:

David A. Branch
Law Offices of David A. Branch & Associates, PLLC
1828 L Street, NW, Suite 820
Washington, DC 20036
davidbranch@dbranchlaw.com

*/s/ M. Carter DeLorme*           .
M. Carter DeLorme